Case 5:08-cv-01866-AKK   Document 13   Filed 02/10/10   Page 1 of 16

FILED
2010 Feb-10 PM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **ALONZO WALES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **5:08-cv-1866-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Alonzo Wales ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of Social Security Administration ("SSA"). This Court finds the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

Page 1 of 16

# I. Procedural History

Plaintiff filed his application for a period of disability and disability insurance benefits on October 12, 2005.[1]  (R. 46) Plaintiff alleged a disability onset date of September 21, 2005.[2]  (R. 47; 290-91)  Plaintiff's application was denied at the initial and reconsideration stages.  (R. 28; 30)  Plaintiff requested a hearing before an ALJ, which was held on September 18, 2007, in Huntsville, Alabama.  (R. 40; 287)  On December 7, 2007, the ALJ denied the claim. (R. 16-25)  This denial became the final decision of the Commissioner of the SSA when the Appeals Council refused to grant review, and, therefore, a proper subject of this court's review.  (R. 5-7)  Having timely pursued and exhausted his administrative remedies, Plaintiff filed this action for judicial review pursuant to section 1631 of the Social Security Act, 42 U.S.C. § 1383 (c) (3).

At the time of the hearing, Plaintiff was 62 years old with a high school education.  (R. 294)  Plaintiff alleges that he has not engaged in substantial gainful activity since September 21, 2005, the alleged onset of his disability.  (R. 47)  His

---

[1] This is Plaintiff's second application for disability benefits.  Plaintiff originally filed an application for benefits on August 19, 2003, alleging an onset date of March 1, 2002, and the following disabling impairments: degenerative disc disease, status post ORIF left humeral shaft fracture, depressive disorder, alcohol dependence, and hypertension.  (Pl.'s Mem 1)  The district court affirmed the decision of the Commissioner.  *See Wales v. McMahon*, 5:06-cv-1448-RDP.

[2] Plaintiff originally alleged a disability onset date of March 1, 2002, (R. 61), but subsequently amended the disability onset date to September 21, 2005 (R. 47).

past relevant work was as a casino jockey representative/travel coordinator. (R. 295-96) Plaintiff's disability report alleges he suffers from pain as a result of back problems and a deteriorating disc in his lower back. (R. 69-70; 295)

## II. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

In order to qualify for disability benefits, a claimant must be disabled as that term is defined by the Social Security Act ("The Act"). The Act defines disabled as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under The Act requires a five step analysis. 20

C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

 (1) whether the claimant is currently employed;

 (2) whether the claimant has a severe impairment;

 (3) whether his impairment meets or equals one listed by the Secretary;

 (4) whether the claimant can perform his past work; and

 (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope,* 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. *Id*.

### IV. The ALJ's Decision

In the instant case, the ALJ determined that Plaintiff's medically determinable physical impairments of alcohol dependence, ulcers, and high liver

enzymes met Steps One and Two.[3]  (R. 19)  In Step Three, the ALJ found that Plaintiff's physical impairments of alcohol dependence, ulcers, and high liver enzymes neither meet or equal the requirements for any listed impairment.  (R. 19-20)

In Step Four, the ALJ determined that, due to Plaintiff's substance use, he was not able to perform work activity at any exertional level for a forty hour work week on a routine basis.  (R. 20)  The ALJ further found that Plaintiff could not perform his past relevant work as a jockey representative/travel coordinator, which the vocational expert classified as light in exertional level and semi-skilled with transferrable skills to sedentary exertional work.  (R. 21, 318)

Lastly, the ALJ considered the Plaintiff's age, education, work experience, residual functioning capacity, and impairments, including alcohol use, and determined that there are no jobs that exist in significant numbers in the national economy in which Plaintiff can perform.  (R. 21)  Based on the foregoing, the ALJ determined that Plaintiff is disabled.  (R. 22)

Although the ALJ found the Plaintiff to be disabled, the ALJ further determined that Plaintiff's alcohol use was a "contributing factor material to the

---

[3] The ALJ concluded that Plaintiff's medically determinable mental impairment of depressive disorder was not "severe" because it caused only a "minimal limitation" in the Plaintiff's ability to perform mental work.  (R. 20)

determination of disability." (R. 17) Absent alcohol use, the ALJ found that Plaintiff could perform light exertional level work and return to his past relevant work as a travel coordinator. Therefore, the ALJ held that Plaintiff was not disabled under The Act.

## V.  Analysis

A.  <u>Alcohol Use</u>

With respect to alcohol use,

> Congress amended the Social Security Act to provide that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. § 423(d)(2)(C) (1997)). The regulations implementing § 423(d)(2)(C) provide that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

*Doughty v. Apfel*, 245 F.3d 1274, 1278 - 79 (11th Cir. 2001). When making the "materiality determination," "the claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability

determination." *Id.* (citing *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999); *Mittlestedt v. Apfel*, 204 F.3d 847 (8th Cir. 2000)).

Plaintiff's brief is completely silent on the issue of whether his alcohol use was a contributing factor material to his disability determination. Clearly, Plaintiff has not met his burden of proving that his alcohol use was not a contributing factor. *Greenbriar, LTD. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989). Although Plaintiff abandoned this issue, the court considers it nonetheless, and finds that the objective evidence in the record substantiates the ALJ's "materiality determination."

Plaintiff has a thirty year history of alcohol abuse. (R. 134) As a binge drinker, the record indicates that he consumes approximately 22-23 ounces of vodka per day. (*Id.*)

On January 25, 2006, Plaintiff received a psychological evaluation from licensed psychologist Thomas Tenbrunsel, Ph.D. (R. 176) Although Plaintiff reported that he had not used alcohol in over a year, Dr. Tenbrunsel diagnosed Plaintiff with alcohol dependence and depressive disorder. (R. 177)

Two months later, on March 23, 2006, during a follow-up visit with Dr. Wilhelm Tietke, Plaintiff stated that he had not had any alcohol in two months. (R. 250) Dr. Tietke noted that he encouraged Plaintiff to continue his sobriety.

(*Id*.)

On August 21, 2007, Plaintiff was admitted to Crestwood Medical Center and treated for delirium tremens and alcohol withdrawal. (R. 204) The attending physician noted that Plaintiff drinks vodka daily. (R. 208) Plaintiff was diagnosed with alcohol dependency with physiological dependency. Plaintiff declined a follow-up appointment for alcohol dependency treatment. (R. 205)

On September 11, 2007, Plaintiff was admitted to Huntsville Hospital for treatment of melena. (R. 255) The attending physician noted that Plaintiff had taken a large amount of Aleve or Goody's powders for pain and "also has been drinking a significant amount of alcohol." (*Id*.)

During the hearing before the ALJ, Plaintiff admitted to sometimes drinking four or five drinks for several days and then quitting. (R. 298) Plaintiff also stated that he has refused follow-up treatment for alcohol use because he is able to stop drinking on his own. (R. 301) Plaintiff testified at the hearing that the longest he has been without alcohol was sixteen months. (R. 301)

The court finds that, given Plaintiff's testimony and the objective evidence concerning Plaintiff's alcohol dependency, the ALJ had substantial evidence that alcoholism is a contributing factor material to the determination of disability. Accordingly, Plaintiff is not entitled to disability benefits. *See* 42 U.S.C. §

423(d)(2)(C).

B.  <u>Disability Due to Pain</u>

Plaintiff sought disability benefits alleging pain due to "back problems, deteriorating disc lower back."  (R. 69; 295)  At the hearing before the ALJ, Plaintiff gave the following testimony:

> Q   Could you tell me in your own words Mr. Wales why aren't you working?
>
> A   . . . I grew up on a farm.  My daddy was a sharecropper and I'd weigh 90 pounds and he put a 90 pound watermelon on my shoulder and I'd have to carry it out to the end of the watermelon patch, but doing all this stuff and picking cotton and all that kind of stuff I think I hurt my back in a early stage of my life, but I've had back pains where it hurts all the time.  Sometimes I can just bend over and pick up a pencil and it catches and I can't make a move.  I can't go nowhere.  I can't even get to a telephone to get help or anything.  And I'm just not able to do any work.

(R. 295)

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote*, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote* at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision:

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

The ALJ concluded that Plaintiff's statements regarding the intensity and frequency of his pain were "not entirely credible." (R. 23)  The ALJ supported its contention with the following objective evidence in the record.

On January 31, 2006, Plaintiff was evaluated by S. Aggarwal, M.D. of Physical Medicine and Rehabilitation Electrodiagnostic Medicine.  (R. 178)  Dr. Aggarwal diagnosed Plaintiff as having chronic low back pain due to arthritis and disc disease with lumbrosacral radiculitis.  (R. 180)  Dr. Aggarwal recommended an MRI scan or electrodiagnostic studies, and physical therapy or injection therapy.  The only restrictions Dr. Aggarwal noted were lifting not more than 20 pounds, standing and walking for ten minutes at a time, and sitting one hour at a time.  (*Id.;* R. 23)

Plaintiff was also treated by Dr. W. Goodson at The Orthopaedic Center.  (R. 219)  On April 16, 2007, Dr. Goodson evaluated Plaintiff for left knee pain.  Dr. Goodson's physical examination revealed that Plaintiff had "full range of motion except for some limitation with extremes of flexion." (R. 219)  Dr.

Goodson ordered an MRI of Plaintiff's left knee, which showed a "nondisplaced fracture involving the left fibula head." (R. 218) Nevertheless, Dr. Goodson noted that Plaintiff could "gradually increase his activities as tolerated." (R. 218) On May 24, 2007, during Plaintiff's last visit to Dr. Goodson, he remarked that Plaintiff had satisfactory motion in his left knee, that he could increase his activities as tolerated, and that he "doesn't have any restrictions or limitations." (R. 217)

It is important to note that Plaintiff did not appear to complain of pain to his treating physician, Dr. Timothy Howard. (R. 156-59; 221-29).

Based on the medical findings of his treating physicians, this court finds that Plaintiff does not meet the pain standard. There is evidence of Plaintiff's underlying condition of deteriorating disc disease. (R. 180) However, the objective medical evidence does not confirm the severity of Plaintiff's alleged pain, nor is his impairment of such severity as to be reasonably expected to cause the alleged pain. Further, substantial evidence exists to support the ALJ's claim that Plaintiff was not entirely credible regarding the intensity and frequency of his pain.

C.  <u>Other Physical Impairments</u>

While physicians' opinions are not determinative of the issue of disability,

20 C.F.R. § 404.1526 (1995), the law is clear that the ALJ must give substantial weight "to the opinion, diagnosis, and medical evidence of the claimant's treating physician." *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982)

Regarding Plaintiff's diagnosis of ulcers, on September 11, 2007, Plaintiff was admitted to Huntsville Hospital complaining of melena and weakness due to coffee grounds emesis. (R. 253, 255)  Plaintiff was diagnosed with ulcerative esophagitis, Hiatal hernia, and a gastric ulcer. (R. 258)  Plaintiff's ulcer was treated endoscopically and Plaintiff was discharged with oral medication.  There is no other information in the record regarding Plaintiff's diagnosis or treatment of gastric ulcer.

On March 23, 2006, Dr. Wilhelm Tietke assessed Plaintiff as having gastroesophageal reflux disease ("GERD"), but also noted that Nexium daily controls his reflux. (R. 250)  Treating physician Dr. Timothy Howard prescribed Plaintiff Nexium.  (R. 156, 228)  However, Dr. Howard's notes do not include information regarding a clinical indication for Nexium.  (*See* R. 156-59; 221-29) Plaintiff's Crestwood Medical Center discharge summary, dated August 21, 2007, lists a diagnosis of reflux esophagitis.  (R. 206) However, the record is otherwise lacking documentation regarding GERD, its severity, or the extent to which it may be disabling.

The ALJ also concluded that Plaintiff's diagnosis of high liver enzymes was "severe." However, Plaintiff's treating physician, Dr. Timothy Howard, noted on November 1, 2006, and April 9, 2007, that Plaintiff's liver profile was normal. (R. 222-23)

Plaintiff also seems to argue that the ALJ did not consider Plaintiff's hypertension when denying benefits. (Pl.'s Memo 5) However, treating physician Dr. Timothy Howard repeatedly noted during regularly scheduled visits that Plaintiff's hypertension was "controlled." (R. 222-23, 225, 226, 227)

In his brief, Plaintiff asserts that the ALJ did not consider evidence of an impairment due to Plaintiff's morbid obesity. (Pl.'s Mem. 7) It is the functional limitations imposed by the condition, not the mere diagnosis, that determines disability. *See Higgs v. Bowen*, 880 F.2d 860, 863 (11th Cir. 1998). Therefore, Plaintiff's reliance on a diagnosis of morbid obesity is simply not material to the discussion of functional loss. *See* SSR 02-1p (providing that Body Mass Index "levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss."). Without evidence demonstrating functional limitations imposed by Plaintiff's obesity, he cannot establish that he had work-related limitations due to obesity.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be AFFIRMED. A separate order in accordance with the memorandum of decision will be entered.

Done the 10th day of February, 2010.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE